In our first case United States v. Mann. Mr. Cooke. May it please the court. The district court found that the defendant was responsible for 10 kilograms of crack on count 25. That finding of crack cocaine is supported by the PSR, the evidence that was presented at the sentencing hearing, and the defendant's own interpretation of that finding on appeal, as well as the probation office's. This is the count where the district court originally said, he corrected himself and said it wasn't crack cocaine, it was crack, right? The district court made two findings. The first was that it was at least 10 kilograms of crack cocaine distributed on her about the summer of 1999. But then he specifically said he was correcting himself, right? And then he said it was not crack cocaine involved in count 25, and he wanted to make that very clear, he said. It was powder cocaine, right? What he said is specifically, and this is a quote, is that the defendant possessed far in excess of the requisite powder cocaine to have him still, excuse me. Well, he said that in addition, but he particularly said I'm correcting my earlier finding, didn't he? He did, and I think that the best understanding of that correction. Why wouldn't we defer to that? The judge knows what he meant. Right. The reason you wouldn't defer to it is because it's not supported by the record. Well, that would be your problem with arguing that back in the day. You can't argue on appeal that that's not now, that we've gone back and forth. That's the law of the case now. You can't say that's not supported by the record. What you have to maintain, and what you did maintain in your brief, was that what he really said was that this was 10 kilograms of crack. But he specifically corrected himself and said this wasn't crack cocaine, but powder cocaine. Right. The finding he specifically made was that it was far in excess of the requisite powder cocaine to have him still at a base offense level of 38. This was here in 2000, this case. And at that time, the opinion from this court stated there was 1.5 kilograms of cocaine base for count 18 and 10 kilograms of cocaine for count 25. Why isn't that the law of the case? It's not the law of the case because that issue was not contested on appeal. Well, if it wasn't contested on appeal, it's a done. You haven't contested it. Well, in other words, the parties didn't dispute. Both agreed that that was 10 kilograms of crack. Well, that's not what we said in our opinion. No, nor is it what the government pled in part of the complaint. Well, the government charged powder, but under the Supreme Court's opinion of Edwards at the time, it was perfectly acceptable, including this court's law before Edwards, it was perfectly acceptable to charge powder. And that was based on the transaction at Marginal Ave. If you thought that was error, why wasn't that claim raised before this court back in 2000? Or why was an error assigned on a motion for rehearing or reconsideration when this opinion came out? It wasn't necessary to this court's decision. And indeed, on the defendant's view, there was no need to even discuss the defendant's view now. Don't you understand that? I think that's all well and good, but you're now stuck with it. I think we're stuck with the finding that the court made, which makes the defendant ineligible. There's two findings. There's a finding of 10 kilograms of crack cocaine, and then there's a finding of more than enough powder cocaine to have him at offense level 38. And if that finding stands, it's not based on the record there wasn't 150 kilograms, but the fact remains that a defendant who had more than enough powder cocaine to be at offense level 38 is not eligible for a reduction. But you've just said the definitive thing. There's no way that the amount was 150 kilograms. You recognize that. So the only thing that justifies what the district, the only thing he could have meant was he grouped. But he didn't say grouping. No, he didn't say grouping, but we're trying to piece together how this would all make sense. And that's the only way it would. And it doesn't make sense to say 10 kilograms of powder cocaine because there's no basis. But the government never disputed it, and indeed it charged it. Well, the government never disputed it. What did the indictment say? The indictment said cocaine, and that was based on the Marshall Ave transaction. Did it say how much? It said, let me get specifically what it said. A quantity of mixture and substance containing a detectable amount of cocaine. Exactly. And in almost every other count, I haven't gone all through all 29, but you talk about a Schedule II narcotic-controlled substance commonly known as crack, cocaine base. You didn't use that language here. Yeah, I'm not disputing that that count charged powder cocaine. But under a various settled law at the time that's still valid, you could charge powder and use other drugs. Improve something else? Right. That's what you're getting at? You could charge powder to improve crack? No, I think that what is we're talking about sentencing here. So there was this transaction at Marshall Ave that involved powder that was cooked into crack. So that was proven. There was a guilty verdict on that. That's all valid. No one's contesting that. The guilty verdict was on powder. Right. And then you get to sentencing. And under Edwards and this court's cases predating Edwards, you can use any kind of drug to determine the drug quantity at sentencing. I thought this was tied to 25, though. It was. But the district court in making findings on Count 18 now relied on specifically Paragraph 102. That's the one he said I credit. And 102 talks about three deliveries of crack at the bar. The Marshall Ave transaction was described in Paragraph 118. That was just three to four kilograms one time of powder that was cooked into crack. And so on that count, it's very clear that the district court at sentencing was using, now we're talking about Count 18, was using crack from the bar transactions. I have to say, I'm not sure you were, it probably looked like maybe you were in grade school when this was originally going along, but the government at one time argued that there was only three kilograms of crack involved in Count 18. So the record is totally screwed up in this case. That's true. Well, we argued a bunch of things that the district court didn't agree with. We came in supporting the PSR, which was 38. Well, you didn't agree with that. Ultimately, you said it was, in fact, nine kilograms. But the government originally argued it was only three. Right. But what matters here is what the district court found. Indeed. That's exactly what matters. We are now two on full circle here. Right. And your most recent finding was what? And his, well, there's the sentencing finding. Answer my question. Most recently, it was that it was 1.5 kilograms of crack. How don't we defer to his most recent? Well, for two reasons. First is that- That's what your point is. We don't give him any credit for what he explained. Right. And you already deferred to him once, almost 13 years ago, in the first time it was here. Well, I think there are two reasons why you wouldn't defer to what the district court said this most recent time. One of the reasons is this district court has construed this very finding in two different ways. There was the defendant's motion under amendments 706 and 711 where the district court first found that the defendant was ineligible. And the only way to reach that conclusion is in embracing the government's position here because if really what was involved was a finding of 1.5 kilograms on count 18 and then a finding of 10 kilograms of powder that was grouped on count 25, the defendant would have been eligible under amendments 706 and 711. But this district court- He said at least. True. 1.5 kilograms. You can't just kind of pick and choose. I mean, I understand as a lawyer I like to do that too. But we have the whole record here. Right. But you don't have to pick and choose here. There are two findings. And when you look at those two findings, neither one of them makes the defendant eligible. When you look for the district court's interpretation, not only is it not supported by the evidence in the record, it's not supported by the words he spoke. The words he spoke were not that there was grouping, not that there were 10 kilograms of powder. The words he spoke were that it possessed far in excess of the requisite powder campaign to have him still at a base offense level 38. So it requires not only rejecting the evidence that's in the record but also the words the district court spoke to reach the conclusion the district court did in this case. And that's not something that a district court can do with, I mean, this court when it does defer to a district court's finding and interpretation of its own record or its own ruling, but not when that doesn't support the very words the judge spoke and it doesn't support the evidence that was in the record. The district court's construction is completely plucked out of thin air in this case. There isn't any evidence of a 10-kilogram powder transaction. Paragraph 112 deals specifically and solely with crack cocaine. The testimony from Detective Early at the hearing deals specifically and solely with crack cocaine. But, you see, the problem with that argument for you is if there is no evidence of a 10 kilograms of this, there certainly is no evidence of 150 kilograms, which is the foundation of your argument about this what didn't include grouping. Right, but that goes back to we can't go back and correct what the district court did. But you only want that rule to apply when it advantages you. When it disadvantages you, you don't want us to apply that rule. You want us to go back and correct. If you're going to look behind what the judge said, then I think there is an overwhelming case that what he really meant was what he found initially, which is 10 kilograms of crack. Well, why don't we go with what the judge said? Well, the judge has said both things. Because he perhaps is in the best position to know what he meant. Right, but again, that deference doesn't apply when it can't be squared with either what the judge said. But it can be squared with it. You don't like the way it's squared with it, but it can be. Our position is the better way to make that work is to look at either what the evidence was, which was just crack cocaine for what the judge was making the findings on, or you look at what the judge actually said. And what he said makes this defendant ineligible. And so if the rule is we will not alter anything in this judge's findings, then this defendant's ineligible. If the rule is, well, we'll look at what he really meant and what the record shows, then the defendant's ineligible. Because it's very clear that there were 10 kilograms of crack here. And what the judge was saying was simply it's okay, as is clearly established and recently reaffirmed by the Supreme Court, that you can use quantities of crack cocaine to sentence on a powder cocaine count. And that's what the Supreme Court said in Edwards. It was a new case at the time of the sentencing and was completely permissible. Thank you very much. You know, just because you have 20 minutes doesn't necessarily mean you have to use it all. Yes, Your Honor. I'd like to start where my colleague left off, which is that the government is asking you to reverse the district judge because there were 10 kilograms of crack, the government says, on count 25, which is the powder count. The only way to attribute different kinds of drugs on a count that charges powder under Edwards, which is the case the government is relying on, there are two ways to do that. One way is co-conspirator liability, which does not apply to Mr. Mann because the conspiracy count in Virginia was dismissed. The other way is relevant conduct, 1B1.3 of the guidelines. And Judge Jackson was clear... We already decided in 2000 it was 1.5 of crack and 10 kilograms of powder cocaine. Why isn't this case over? I agree, Your Honor, that this court could easily resolve the instant appeal based on my law-of-the-case argument. This court on direct appeal, and in fact Judge Motz, as you recall, was on the panel, found that it was... looked at the same sentencing transcript, found 1.5 kilos of crack, 10 kilos of powder, and said that that was not clearly erroneous, and in fact wrote at length about how the judge had considered all of the testimony at trial and at sentencing, including Detective Early, and et cetera. So I agree that you could affirm on the basis of law of the case, Your Honor. An alternative ground for affirmance would be on the merits. And the government agrees, both here today and on page 14 of its brief, that the district judge refused to use the relevant conduct provision of the guidelines at this sentencing because of his finding about double jeopardy. In asking you now to attribute or to find that the judge attributed 10 kilograms of crack on a powder count, the government is asking you to reverse the original holding about relevant conduct from 1999, which is exactly the type of legal decision that cannot be revisited in a 3582 proceeding. That ship sailed when the government failed to cross-appeal in 1999 with the 2000 decision in the Brown case. So this appeal is actually far simpler. This appeal is really simple if you want to rely on law of the case. It's also simple on the merits because count 25 is powder. There's no relevant conduct in this case because the district judge refused to use it. Therefore, count 25 can only have powder attributed to it. There's no other way. And the Edwards case relies itself on relevant conduct and conspirator liability to say that you can attribute crack at sentencing on a powder count. But this judge didn't do that. So that ship sailed on direct appeal and cannot be fixed now under Dillon and dozens of other 3582C2 cases since 2008 when the commission started amending the crack guideline. Because of grouping, as Judge Motz pointed out, for the second half of the finding at the correction, the requisite amount of powder cocaine to have an offense level of 38 in this case is any amount greater than zero. If count 25 involved one gram of powder, the offense level would be 38 because of the grouping provisions of the guideline. So whether it was 3 kilos or 10 kilos, as long as it wasn't... But the court didn't say anything about grouping. He said there's at least enough to justify this level 38. And the problem is there wasn't very much. There wasn't 150. I agree. I mean, Detective Early said that there were 3 kilos of powder, and that was at the sentencing hearing, and in fact the government requested people. It doesn't sort of sound like at least as much language. Well, and he didn't use the word grouping, Your Honor, but the PSR in this case used the word grouping. At page 436, it's worksheet B, like every drug case that has multiple counts. The probation officer agreed that these counts group. Drug counts always group unless there's something weird like a murder cross-reference. And so in this case, grouping is the answer. I admit the language is not a model of clarity, but that's just another reason to defer to Judge Jackson's own interpretation of what he meant. With respect to, I listened to the argument in 2010 when this panel heard the original 3582 appeal, and one of you asked about the trial record. So I actually went back to some of the trial transcripts. I didn't read all 5,000 pages. So the jury instructions in this case on count 25, it was powder. That's at the trial transcript at page 5,090. The government's closing argument is at trial transcript, page 4,892. The government argued only about 2 kilos of powder being delivered, and I think that that's clear that that is the Marshall Avenue transaction. As I understood the government's argument this morning, they're conceding that that count was powder. So in that case, given the relevant conduct ruling, the transactions at the Arby's, which is the 10 kilos of crack they're asking you to find, just shouldn't happen. And as the court pointed out, count 18, the government only requested 3 kilos of crack, and the judge has consistently refused to find more than 1.5 kilograms of cocaine. So as I said, I think this court could affirm on the basis of the finding in 2000 in the Brown appeal. I mean, it's in our brief. I won't read it to you. But this court refused to find that Judge Jackson's findings were clearly erroneous, and you could also affirm on the merits for the reasons that the court has discussed. If I could just have the court's indulgence. Sure. I guess I'd just like to reiterate that this is not a full resentencing. It's a 3582C2 proceeding, and so this court should refuse to correct rulings like the relevant conduct ruling and should defer to Judge Jackson's interpretation of his own sentencing hearing. Thank you very much. Thank you, Your Honors. Mr. Cook, do you have any rebuttal? Just a factual point, Your Honor. The district court, in our view, didn't correctly apply relevant conduct in this case. The point of relevant conduct is to avoid the effects of charge bargaining, and so you look across counts. But the district court did apply the relevant conduct guideline. If you look at page 159 of the joint appendix, the district court, in fact, specifically discusses 1B1.3, which is the relevant conduct guideline. And that guideline at the time, as it does today, said that you consider conduct that was jointly undertaken as criminal activity, whether or not it was charged as a conspiracy. And so the plain language of 1B1.3, as it applied at the time, was that you would look to a course of conduct, a joint scheme, and that you would, as Edward held, look to quantities of crack cocaine in sentencing on a count for the charged powder cocaine. Thank you very much. We will come down and greet the lawyers and go directly to our next speaker.
judges: Diana Gribbon Motz, Robert B. King, G. Steven Agee